# CASES

## IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1899.

### Gafford v. The State.

*Indictment for Murder.*

1. *Homicide; charge on the effect of evidence improperly given by the court ex mero motu.*—On a trial under an indictment for murder, it is improper for the court, *ex mero motu*, to instruct the jury "that the indictment in the case was for murder in the first degree, and that the State's contention in the case was that the offense was either murder in the first degree or nothing, and that the verdict should be a verdict of acquittal or for murder in the first degree, and the court charges the jury that the State's contention in this respect is correct;" such instruction being upon the effect of the evidence, in violation of section 3326 of the Code, and at the same time taking from the jury the right and duty to ascertain by their verdict whether the defendant was guilty of murder in the first or second degree in violation of section 4857 of the Code.

2. *Same; same; court not required to instruct jury that they can convict of a lower offense than murder in the first degree.* Under the provisions of the statutes which forbid a trial court from charging on the effect of the evidence, except on request, (Code, § 3326), and which require the court on a trial under an indictment for murder, to leave it to the jury to determine in which degree of murder the defendant is guilty, if at all, (Cr. Code, § 4857), in a case where the uncontradicted evidence shows that the defendant is either guilty of murder in the first degree or not guilty of any offense, by reason of having struck in self-defense, it is improper for the court to affirmatively charge the jury, on the defendant's request, that under the evidence the defendant may be guilty of a less crime than murder in the first degree.

1

[Gafford v. The State.]

3. *Same; when charge as to the law of manslaughter inappropriate.*—On trial under an indictment for murder, where the evidence shows that the homicide was either murder in one of the degrees or was justified on the ground of self-defense, it is not improper for the court to refuse to instruct the jury upon the law of manslaughter, or to refuse to instruct them that under the evidence the defendant might be guilty of a lower offense than murder, and that, therefore, they might be justified in finding the defendant guilty of manslaughter only.

4. *Same; misleading charge.*—On a trial under an indictment for murder, a charge which instructs the jury that the "killing may have been willful, deliberate, premeditated and done with a deadly weapon used for the specific purpose of killing the deceased and still be lawful," is confusing and misleading, and, therefore, properly refused.

5. *Same; admissibility of evidence.*—On a trial under an indictment for murder, evidence that the defendant had been asked, on the afternoon of the homicide, to take supper with a neighbor, dissociated from any other testimony making it relevant or pertinent to any issue in the case, is incompetent and inadmissible.

6. *Evidence; impeachment of absent witness.*—In a criminal case, where the prosecution, for the purpose of avoiding a continuance, has admitted a showing as to what one of defendant's absent witnesses would testify, if present, in which it was set forth that the absent witness would depose to certain material facts in the case, it is erroneous for the court, after such showing has been introduced in evidence, to allow a witness for the prosecution to testify that the absent witness had stated to him that he knew nothing about the case; no predicate having been laid for the impeachment of the absent witness, in respect of his testimony as set forth in the showing.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. J. W. FOSTER.

The appellant was indicted and tried for the murder of Francis B. Lloyd, was convicted of murder in the first degree, and sentenced to life imprisonment in the penitentiary.

It was shown by the evidence that the deceased was killed by being shot with a shot gun by the defendant late one afternoon while he, the deceased, was riding along the public road.

The evidence for the State tended to show that the defendant lay in wait for the deceased, and fired upon him when within close range, and that there was no hostile demonstration on the part of the deceased towards the defendant, but that the defendant was riding along the road in his buggy reading a newspaper.

The evidence for the defendant tended to show that the deceased was coming from Greenville in Butler county, along the public road, and that the defendant was walking in an opposite direction, going towards Greenville, and that they met. That Lloyd asked the defendant why he was carrying that gun on his shoulder. He replied that it was his gun and he had a right to carry it, and then he asked the deceased about his having broken his promise not to have anything more to do with the sister of the defendant, one Mrs. Miller. That during the conversation deceased looked away from the defendant into a field, and that as he did so, he rose from his seat in his buggy and drew his pistol; that thereupon the defendant demanded that he put up the pistol, and upon his failing to do so, the defendant fired upon him, inflicting a mortal wound, from which he died immediately.

During the examination of one Will Bishop, as a witness for the defendant, he testified that he and his father met the defendant early in the afternoon of the killing, but prior thereto; that they met some distance up the road from where the killing occurred and in the direction away from Greenville. Thereupon the defendant's counsel asked the witness the following question: "I will ask you whether or not you extended the defendant an invitation to come up to the house that evening?" The State objected to the question, on the ground that it called for irrelevant and immaterial evidence; the court sustained the objection, and the defendant duly excepted. Upon the witness further testifying that his father invited the defendant up that evening for supper, he was then asked by the defendant's counsel the following question: "What time did you eat supper?" The State objected to this question, the court sustained the objection, and the defendant duly excepted. Subsequent to

the introduction of the witness, Will Bishop, the defendant was introduced as a witness in his own behalf and testified that early in the afternoon of the homicide, he met Will Bishop and his father and that the older Bishop invited him to supper that afternoon, and that he was on his way to supper when he met the deceased, the home of said Bishop being in the direction of Greenville from his house, which was in the direction in which he was going when he and the deceased met in the road. The other facts of the case, necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

The portion of the court's oral charge to which exception was reserved is set out in the opinion. At the request of the State, the court gave to the jury the following written charges: (1.) "The court charges the jury that the words 'unless the evidence excludes to a moral certainty every supposition but that of guilt,' means that the jury must be satisfied beyond a reasonable doubt of his guilt." (2.) "The court charges the jury that if they believe from the evidence in this case beyond a reasonable doubt that the defendant laid in wait with the formed design to take the life of deceased, then notwithstanding they may further believe that the deceased made the first hostile demonstration, defendant would be guilty of murder in the first degree." (3.) "The court charges the jury that the written charges read to the jury by the defendant's counsel in this case are not in conflict with the general oral charge of the court, but simply a different manner of stating the law in this case." (4.) "The court charges the jury that if they believe from the evidence beyond a reasonable doubt that John Gafford laid in wait for Bartow Lloyd for the purpose of killing him, and did kill him, then the defendant can not be excused or justified under his plea of self-defense, and you must convict him." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by him: (C.) "Gentlemen of the jury, under the evidence in this case, you would be authorized to find a verdict of either

murder in the first degree, murder in the second degree, manslaughter in the first degree, sometimes voluntary manslaughter, or a verdict of acquittal; the character of your verdict depending upon the conclusions you may reasonably deduce from the evidence." (D.) "I charge you, gentlemen of the jury, that under one phase of the evidence, if believed, the defendant, if guilty of any offense at all, and provided the evidence should convince you beyond a reasonable doubt of his guilt, might be guilty of a lower offense than murder in the first degree." (E.) "I charge you, gentlemen of the jury, that under one phase of the evidence, if believed, the defendant, if you find him guilty at all, may be guilty of a lower offense than murder, provided, you should be convinced of his guilt of an unlawful homicide beyond a reasonable doubt." (F.) "If the defendant when he shot deceased had reasonable grounds for believing that the deceased had a felonious design against him, although it should afterwards appear that there was no such design, his offense would not be murder, but would be either manslaughter or excusable homicide, according to the degree of caution used and the probable grounds of such belief." (G.) "If the defendant, when he shot deceased, had reasonable grounds for believing that the deceased had a felonious design against his life, although it should afterwards appear that there was no such design, his offense would not be murder in the first degree, but would be either murder in the second degree, or voluntary manslaughter, or excusable homicide, according to the degree of caution used by defendant, and the probable grounds of such belief." (H.) "If the defendant, when he shot deceased, had reasonable grounds for believing that the deceased had a felonious design against his life, and before defendant shot deceased, deceased did an overt act as though to accomplish such design, even though there was no such design, and though such overt act may not have been sufficient to excuse the killing, and if the defendant had no previously formed design to unlawfully take the life of deceased, but then and there suddenly formed the intent to shoot or kill the deceased, you must

acqait the defendant of murder in the first degree."
(I.) "I charge you, gentlemen of the jury, that a homicide may be willful, deliberate, and premeditated, and still not unlawful or wrong in the eye of the law; and if the only evidence of malice in the case is the use of a deadly weapon, and there are circumstances in evidence, which, if believed, tend to show a justification for the use of the deadly weapon, and the jury do believe such evidence, the killing, though willful, deliberate and premeditated, and done with a deadly weapon, and used for the specific purpose of destroying the life of the deceased, would be excusable, and a verdict of acquittal should be given by the jury." (J.) "I charge you, gentlemen of the jury, that this killing may have been willful, deliberate, premeditated and done with a deadly weapon used for the specific purpose of killing deceased, and still be lawful." (K.) "I charge you, gentlemen of the jury, that this killing must have been without sufficient legal excuse or provocation before you can find the defendant guilty, even though you may believe from the evidence that the killing was willful, deliberate, premeditated and done with a deadly weapon.

JAMES WEATHERLY and TERRY RICHARDSON, for appellant.—Although the bill of exceptions purports to set out all the evidence in the case, and although the counsel for the State made no requests in writing to such effect, the court in its oral charge to the jury instructed them that their verdict should be a verdict of acquittal, or for murder in the first degree, and refused several written charges requested by the defendant instructing them that under the evidence a verdict for less than murder in the first degree might be found. In other words, the court itself ascertained the degree of murder, thereby invading the province of the jury, and violating the express requirement of the statute.—Code of 1896, §§ 4854, 4857-8; Code of 1896, § 3326; *Edgar v. State,* 43 Ala. 314; *Beasly v. State,* 50 Ala. 151; *Hornsby v. State,* 94 Ala. 66; *Swoope v. State,* 115 Ala. 40, citing with approval *Evans v. State,* 109 Ala. 23.

The court may refuse to charge on *manslaughter* where there is an *entire absence* of evidence having a

[Gafford v. The State.]

tendency to reduce the offence to manslaughter.—*De
Arman v. State*, 71 Ala. 361; *Compton v. State*, 110 Ala.
35; *Dennis v. State*, 112 Ala. 67; *Pierson v. State*, 99 Ala.
148.    But this exceptional authority is permitted only
in plain cases, and because there is no statute peremp-
torily requiring that the jury shall ascertain the degree
of the offense as in the case of murder.    And even as to
manslaughter, it is said that "it is a grave responsibility
the judge assumes in the refusal of such instructions; a
responsibility which ought to be assumed only in plain
cases."—*Brown v. State*, 109 Ala. 80.    But when the in-
dictment is for murder, "It is an imperative duty * * *
* * * for the judge to instruct the jury as to the char-
acteristics and constituents of murder in each of its de-
grees, leaving them free to determine of which degree, if
either, there is guilt—*less than this will not satisfy the
statute.*"—*Brown v. State*, 109 Ala. 80.

It was error, under the  facts of this case,  for
the court to instruct the jury that the law presumes ma-
lice from the use of a deadly weapon, though the charge
was accompanied with the required qualification, and
was abstractly correct.    But where the State, as in this
case, has introduced direct evidence tending to show ma-
lice, and the defendant admits the killing and introduces
proof to rebut the evidence of malice, there is no
necessity for the fiction of presumptive malice, and the
introduction of it into such a case could have no other
effect than to prejudice the jury and induce them to
fall back upon the presumption to resolve all doubts as
to the existence of actual malice against the defendant.
*Eiland's Case*, 52 Ala. 322; *Hornsby's Case*, 94 Ala. 55.

CHAS G. BROWN, Attorney-General, for the State.—
The charge given by the court *ex mero motu* that "the
verdict should be a verdict of guilty or for murder in
the first degree," should not work a reversal.    An indict-
ment for murder in the statutory form includes murder
in the two degrees; and it has been held by this Court
that under such indictment the defendant may be con-
victed of either of the degrees of murder, or of either
of the degrees of manslaughter, and it is equally the duty

of the jury to find the degree of the homicide whether murder in the first or second degree, or manslaughter in the first or second degree. And yet this Court has held and sustained the court below in refusing to charge on manslaughter when there was no evidence showing that the defendant could have been guilty of this degree of homicide.—*Pierson v. State*, 99 Ala. 146; *Compton v. State*, 110 Ala. 35; *Dennis v. State*, 112 Ala. 67.

There is no error in other charges given by the Court. *Fuller v. State*, 117 Ala. 200; *Compton v. State*, 110 Ala. 29 ; *Hornsby v. State*, 94 Ala. 56.

The counsel for appellant in several of the charges asked and refused endeavored to present the question involved in the first exception to the oral charge of the court; but an inspection of said charges will readily show the Court that they embody incorrect statements of the law, are lacking in precision and definiteness, are misleading and argumentative, or are based on one phase of the evidence solely.—*Tanner v. State*, 92 Ala. 8; *Ramsey v. State*, 91 Ala. 29; Thompson on Charging Jury, p. 119; 1 Brick Digest 339, § 59; *Crawford v. State*, 112 Ala. 1; *King v. State*, 120 Ala. 329; *Teague v. State*, 120 Ala. 309; *Nabors v. State*, 120 Ala. 323; *Hicks v. State*, 123 Ala. 15; *Evans v. State*, 109 Ala. 13.

McCLELLAN, C. J.—(1.)  Indictment for murder. This is an appeal from a judgment of conviction of murder in the first degree with life sentence to the penitentiary, rendered on the second trial of the defendant. On the first trial there was conviction of murder in the first degree with sentence of death. There was an appeal from that judgment to this court, and it was here reversed, and the cause remanded. On the second trial the circuit judge in the course of his charge given *ex mero motu* instructed the jury "that the indictment in the case was for murder in the first degree, and that the State's contention in the case was that the offense was either murder in the first degree or nothing, and that the verdict should be a verdict of acquittal or for murder in the first degree, and the court charges the jury that the State's contention in this re-

spect is correct." Defendant excepted to this part of the charge. This instruction was upon the effect of the evidence, and not being requested by either party in writing, the giving of it was violative of section 3326 of the Code, (*Edgar v. State,* 43 Ala. 312; *Beasley v. State,* 50 Ala. 149, 152) ; and it took from the jury the right and duty to ascertain by their verdict whether the defendant was guilty of murder in the first or second degree, in violation of section 4857 of the Code.—*Cobia v. State,* 16 Ala. 781; *Johnson v. State,* 17 Ala. 618; *Levison v. State,* 54 Ala. 520; *Brown v. State,* 109 Ala. 70, 74 *et seq.; Swoope v. State,* 115 Ala. 40.

(2.) It does not follow, however, that it is the duty of the court to affirmatively instruct the jury in all murder cases that they would be justified in finding the defendant guilty of a less degree of murder than the first degree. To the contrary, it is only by force of the latter statute—§ 4857—that the duty is upon the trial court in a case of this class to instruct the jury in definition of murder in each degree, and to submit to them the ascertainment of the degree in which the defendant is guilty if guilty of murder at all. In the absence of this statute the court in a proper case might well charge the jury on request in writing that the defendant is guilty of murder in the first degree or of nothing; and in the absence of both the statutes referred to—§ 3326 and § 4857—the court might so charge of its own motion. The operation and effect of the statutory provisions, therefore, is merely to prevent the court from charging on the effect of the evidence except when moved thereto by a party; and to require it to leave to the jury the ascertainment of the degree of murder upon a conclusion of guilt of murder in some degree, and this it must do though on the undisputed evidence the defendant is clearly guilty of murder in the first degree. But when it has done this, it is under no sort of duty to further instruct the jury, at the written request of the defendant or otherwise, that on the evidence the defendant, if guilty at all, might be guilty

of a lower offense than murder in the first degree, when the evidence without conflict shows that the defendant is either guilty of malicious, willful, deliberate and pre-meditated homicide or that he struck in self-defense and is not guilty of any offense.   The statutes prevent the court from so charging the jury, and they require the ascertainment of the degree of murder, if guilt is found, to be left to the jury; but they do not require the court in such case to affirmatively charge the jury on defend-ant's request that on the evidence the defendant may be guilty of a less crime than murder in the first degree. And, therefore, when the court has complied with the statute in respect of defining murder in the first and sec-ond degrees and leaving it to the jury to determine in which degree the defendant is guilty if at all, such charges should not be given.   What we have said in this paragraph has reference to the construction and opera-tion of the statutes cited in the abstract, and is not to be taken as indicating any opinion on our part as to whether in their absence the trial court would have been justified in charging the jury that on the facts of this case the defendant was guilty of murder in the first de-gree if guilty of any offense.

(3.)  The homicide involved here was either murder in the first or second degree, or it was justified on the ground of self-defense.   There was, therefore, no occa-sion for the trial court to give the law of manslaughter in charge to the jury, and it properly refused charges, of which that marked D is a sample, which would have authorized the jury to find, or tended to mislead them to the conclusion that they would be justified in finding the defendant guilty of manslaughter only.—*Rogers v. State*, 117 Ala. 9, 15.

(4.)  To say the least of charges I. J. and K. refused to defendant, they tended to confuse and mislead the jury.   A man may form and entertain a design to take life to save himself from grievous bodily harm or death, and may in pursuance of such design actually take life in self-defense and be justified therein; but to say that a homicide may be willful, deliberate and premeditated and yet justifiable—to use the statutory words defining

murder in the first degree to characterize under certain conditions a lawful homicide—is a practice well calculated to confound the jury and to lead to wholly unwarranted results.   And in a legal sense, moreover, one cannot be said to act with willfulness, deliberation and premeditation when his act, though according with his intent at the moment, is coerced by an impending and immediate necessity to take life that his own life may be preserved.   These charges were properly refused.

What we have said will serve to indicate in part the grounds of our conclusion that the court committed no error in refusing charges asked by defendant which are not specially mentioned; and we find no error in the rulings of the court on charges requested by the State.

(5.) So far as the case had been developed, when it was proposed for the witness Will Bishop to testify that his father had invited the defendant to supper on the evening of the homicide, that fact was entirely irrelevant and impertinent, and the court properly excluded the proposed testimony.   If this testimony had been offered after the defendant had testified that when he met the deceased on the occasion of the homicide he was on his way to the elder Bishop's house in acceptance of such an invitation from him, the court would doubtless have allowed it to go to the jury.

(6.) The prosecution having admitted for the purpose of avoiding a continuance a showing as to what Darby, defendant's absent witness, would testify if present, in which it was set forth that Darby would depose to certain material facts in the case, the trial court, after this showing had been put in evidence by the defendant, allowed the prosecution to show by a witness that Darby had said to him that he knew nothing about the case. This was clearly error.   The showing stood in the stead of Darby's testimony; for all the purposes of the trial it was his testimony as a witness on the stand.   And he could no more be impeached in respect of it by evidence of contradictory or inconsistent statements made by him, without first calling his attention to them and asking him whether he made them, than if he had personally appeared and testified before the jury.   The fact that

the witness was not before the jury in reality, and that of consequence the prosecution had no opportunity to lay a predicate for his impeachment by proof of inconsistent statements, can make no difference in the application of the rule. The State placed itself at this disadvantage by admitting his testimony in his absence; and this was matter for consideration by the solicitor in determining whether to make the admission or submit to a continuance.—*Pool v. Devers*, 30 Ala. 672, 676.

The other exceptions to the rulings of the court on the admissibility of testimony have been considered, and found to be without merit.

Reversed and remanded.